FILED

DEC 1 3 2005

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CHARLES ALLEN HOLIFIELD, | ) | C 02-0585 JF (PR) |
| Petitioner, | ) | |
| | ) | ORDER DENYING PETITION FOR WRIT |
| | ) | OF HABEAS CORPUS |
| vs. | ) | |
| | ) | |
| E. ROE, Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner, a state prisoner proceeding pro se, seeks a writ of habeas corpus pursuant to 28

U.S.C. § 2254 challenging his conviction for failing to inform law enforcement of his current address

as a convicted sex offender (Cal. Penal Code § 290 (a)(2)).  This Court determined that the petition

raises four cognizable claims: (1) there was insufficient evidence to support Petitioner's conviction

that he "willfully" failed to register; (2) there was insufficient evidence to support his conviction

because there was no substantial evidence that Petitioner failed to register; (3) the conviction violates

Petitioner's right to due process because he did not have notice of the duty to register; and (4)

Petitioner's sentence constitutes cruel and unusual punishment in violation of the Eighth

Amendment.  Respondent has filed an answer addressing the merits of the petition, and Petitioner

United States District Court

For the Northern District of California

filed a traverse.  After reviewing the papers, the Court concludes that Petitioner is not entitled to habeas corpus relief based on the claims presented and will deny the petition.

# I. FACTS[1]

<u>Prosecution Evidence</u>

As a convicted sex offender, Petitioner has a lifetime obligation to apprise local law enforcement of his current residence.  The lifetime obligation is spelled out on the registration forms.  Registration is required on the offender's birthday, it is also required within five days of moving into a new jurisdiction.  The registrant must notify the new jurisdiction and also the jurisdiction he or she just left.  Some jurisdictions allow registration by telephone.

The California Department of Justice collects registration information from local law enforcement agencies.  This information showed that Petitioner had provided local law enforcement with a dozen addresses or updates in Monterey County since 1982.  On January 26, 1997, Petitioner registered with the address of a Marina hotel.  On July 24, 1997, Petitioner registered "under duress" with the Monterey County Sheriff's Department at an address on Holly Hills in an unincorporated area of Monterey County.  Petitioner again registered "under duress" at Holly Hills in January 1998.

In early May 1998, Petitioner moved out of the Holly Hills residence and into Sand City in Monterey County, where he also worked.  Sand City occupies an area of 1.5 square miles, it has 200 residents and ten police officers.  Sand City Police Officer Vito Graziano had his first contact with Petitioner on June 27, 1998.  He went to a warehouse at 718 Redwood Avenue on a civil standby, so that Petitioner's ex-girlfriend and her mother could retrieve some of the ex-girlfriend's property.  Graziano saw Petitioner around Sand City thereafter.

---

[1]  The relevant facts are set forth and summarized in the unpublished opinion of the California Court of Appeal, Sixth Appellate District.  <u>See</u> <u>People v. Holifield</u>, H020421 (October 11, 2000); Respondent's Exhibit G.

**United States District Court**
For the Northern District of California

1

2   On or about July 4, 1998, Graziano contacted Petitioner again to assist his ex-girlfriend's

3   mother in retrieving more property.  By now Graziano had learned that Petitioner was a section 290

4   registrant. According to Graziano, he asked Petitioner where he was staying and told him that he had

5   to register.  Petitioner said he was a transient, living in his vehicle and in the warehouse. Petitioner

6   said that, as a transient, he did not have to register, to which Graziano replied that the law had

7   changed.  Graziano did not document this contact and did not tell anyone about it. Graziano saw

8   Petitioner at the warehouse thereafter.  Petitioner appeared to be living and working there.

9   On July 14, 1998, Monterey County Sheriff's Investigator Larry Bryant learned that the FBI

10  had looked for Petitioner unsuccessfully at the Holly Hills address.  A man at that address told

11  Bryant that Petitioner had moved out in the first part of May.  Petitioner had been working and was

12  now living in Sand City.  Bryant found that neither Sand City nor neighboring Seaside had registered

13  Petitioner as a sex offender.

14  Bryant spoke with Officer Graziano, who told him that he had contact with Petitioner that

15  summer.  On August 7, 1998, Bryant, Graziano, and other officers arrested Petitioner at his place of

16  employment, Neff's Cabinets at 527 Redwood Avenue, Sand City.

17  During booking, Petitioner said he was homeless.  After being advised of his rights pursuant

18  to Miranda v. Arizona (1966) 384 U.S. 436, Petitioner told Bryant that he had been living with his

19  girlfriend in Holly Hills, but because of a restraining order sheriff's deputies told him he could not

20  live there anymore. He said he gave the deputies Sand City as a place of employment. He said he last

21  registered at Holly Hills.  When Bryant asked Petitioner if he had read the part of the temporary

22  registration identification pertaining to notice on moving, Petitioner explained that he had the

23  restraining order against him.  The day after his arrest, Petitioner registered in Sand City as a

24  transient.

United States District Court

For the Northern District of California

<u>Defense Evidence</u>

Petitioner began working for Steven Neff in August 1997. Sand City police officers saw Petitioner at Neff's cabinet shop several times, including the civil standbys. Neff had Petitioner call in a complaint because his ex-girlfriend was harassing him on the shop telephone. In July 1998, an investigation led FBI agent Sean Wells to look unsuccessfully for Petitioner at the Holly Hills residence. Wells learned that Petitioner might be in a Sand City warehouse. Another agent contacted Petitioner on July 24, 1998.

Petitioner testified as follows. Since 1982 he has regularly registered as a sex offender. On every occasion, he signed a form that someone filled out based on his answers. He began registering "under duress" after the police ran him out of the town of Marina in 1997. The local police circulated fliers identifying him as a convicted sex offender. As a result, Petitioner lost his job and was evicted. Petitioner was upset and wanted to have nothing to do with the police. He did not want them to know where he was living.

Petitioner registered at Holly Hills and lived there with his girlfriend. They had a rocky relationship. She got a restraining order so he was always the one that got in trouble when the sheriff was called. One day, even though Petitioner was the one who called the sheriff, deputies told him that he would be arrested if he went back to the residence. They told him to get out of Prunedale and stay out. Petitioner said he would sleep in his truck. They said that would violate the law and he would be arrested. Finally Petitioner said his address was his boss's address in Sand City.

Petitioner stayed at his workplace for a few days until he rented a warehouse down the road. When he rented the warehouse space at 718 Redwood he went to the police department in Sand City. The door was closed and no one was in the office to help. As he left he saw an older, white officer in the parking lot and told him that he wanted to register under section 290. The officer said he had

1  to register with Nancy, a clerk who was not there.  He could not register at the warehouse because it

2  is not residential.  The officer also said since Petitioner had come in, everything would be fine.  They

3  knew where he was, there would be no fliers.  At trial Petitioner could not recall the officer's name.

4

5  After that Petitioner did not attempt to register until after he was arrested.  Petitioner had

6  several contacts with Sand City police and Officer Graziano.  When Petitioner was arrested, he

7  possessed a registration certificate from Holly Hills, not from Sand City.  Petitioner said Graziano

8  was lying about telling Petitioner he needed to register.

9  On June 1, 1999, following a bench trial, Petitioner was convicted in the Monterey Superior

10  Court of failing to register as a sex offender, with four "strike" prior felony convictions and two prior

11

12  prison terms.  Petitioner was sentenced to twenty-seven years to life in prison. The California Court

13  of Appeal affirmed the judgment in an unpublished opinion on October 11, 2000, and the California

14  Supreme Court denied a petition for review.  Petitioner filed the instant federal habeas petition on

15  September 11, 2002.

16

17  **II.  STANDARD OF REVIEW**

18  This Court will entertain a petition for writ of habeas corpus "in behalf of a person in custody

19  pursuant to the judgment of a state court only on the ground that he is in custody in violation of the

20  Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The Court may not grant

21  a petition with respect to any claim adjudicated on the merits in state court proceedings unless that

22  adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application

23

24  of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2)

25  resulted in a decision that was based on an unreasonable determination of the facts in light of the

26  evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).

27  For purposes of 28 U.S.C. § 2254(d)(1), "clearly established Federal law" refers to the

28

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.02\Holifield585den                    5

1   holdings of the United States Supreme Court as of the time of the relevant state court decision.

2   Williams v. Taylor, 529 U.S. 362, 412 (2000).  In other words, it is "the governing legal principle or

3   principles set forth by the Supreme Court at the time the state court renders its decision."  Lockyer v.

4   Andrade, 123 S. Ct. 1166, 1172 (2003).  A state court decision may be "contrary to" clearly

5   established federal law if (1) "the state court arrives at a conclusion opposite to that reached by [the

6

7   Supreme] Court on a question of law," or (2) "if the state court decides a case differently than [the

8   Supreme] Court has on a set of materially indistinguishable facts."  Williams, 529 U.S. at 412-413.

9           "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the

10  state court identified the correct governing legal principle from [the Supreme] Court's decisions but

11

12  unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413.  The relevant

13  inquiry is not whether the state court applied the law erroneously or incorrectly, but "[r]ather that

14  application must be objectively unreasonable."  Lockyer, 123 S. Ct. at 1175.  A federal habeas court

15  making the "unreasonable application" inquiry should ask whether the state court's application of

16  clearly established federal law was "objectively unreasonable."  Williams, 529 U.S. at 409.  The

17

18  "objectively unreasonable" standard does not equate to "clear error" because "[t]hese two standards .

19  . . are not the same.  The gloss of clear error fails to give proper deference to state courts by

20  conflating error (even clear error) with unreasonableness."  Lockyer, 123 S. Ct. at 1175.

21          Under U.S.C. § 2254(d)(2), a federal court may grant the habeas writ if it concludes that the

22  state court's adjudication of the claim "resulted in a decision that was based on an unreasonable

23

24  determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C.

25  §2254(d)(2)(2).  The Court must presume correct any determination of a factual issue made by a

26  state court unless Petitioner rebuts the presumption of correctness by clear and convincing evidence.

27

28  28 U.S.C. § 2254(e)(1).

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.02\Holifield585den                        6

**III. DISCUSSION**

**A. Sufficiency of the Evidence**

Petitioner alleges in two of his claims that there was insufficient evidence to support his conviction. Specifically he claims that there was insufficient evidence that he "willfully" failed to register and there was no substantial evidence that he failed to register because, according to Petitioner, written registration is not required. Respondent argues that the appellate court determined that the evidence presented at trial was sufficient to support the conviction and properly applied the appropriate standard of review set forth in <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979).

Under <u>Jackson</u>, the appellate court was required to determine whether any "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" and apply this standard "with explicit reference to the substantive elements of the criminal offense as defined by state law." <u>Id</u>. at 319, 324 n. 16. The state appellate court set forth the requirements of registering as a sex offender under Cal. Penal Code § 290 by stating:

> Defendant was charged with the general intent crime of failing to register as a sex offender. (<u>People v. Johnson</u> (1998) 67 Cal. App. 4th 67, 72). As the trial court accurately stated, "The question of willful as I've indicated is a general intent, but is defined as a purpose or willingness to commit the act or omission. Does not require any intent to violate the law or injure another or acquire any advantage."

> Section 290 requires certain convicted sex offenders "to register with the chief of police of the city in which he or she is residing, or if he or she has no residence, is located, or the sheriff of the county if he or she is residing, or if he or she has no residence, is located, in an unincorporated area or city that has no police department, . . .within five working days of coming into, or changing his or her residence or location within, any city, county, or city and county, or campus in which he or she temporarily resides, or, if he or she has no residence, is located." (§ 290, subd. (a)(1)(A).) This subdivision, unlike subdivision (f)(1), does not require registration in writing.

> Subdivision (f)(1) states: "If any person who is required to register pursuant to this section changes his or her residence address or location, whether within the jurisdiction

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.02\Holifield585den                    7

United States District Court

For the Northern District of California

in which he or she is currently registered or to a new jurisdiction inside or outside the state, the person shall inform, in writing within five working days, the law enforcement agency or agencies with which he or she last registered of the new address or location. The law enforcement agency or agencies shall, within three days after receipt of this information, forward a copy of the change of address or location information to the Department of Justice. The Department of Justice shall forward appropriate registration data to the law enforcement agency or agencies having local jurisdiction of the new place of residence or location."[2]

Exh. G at 7-8.

The appellate court properly applied the <u>Jackson</u> standard, both in inquiring as to whether the trier of fact could have found that Petitioner "willfully" failed to register as a sex offender and in noting the registration requirements of a sex offender under California state law.  On appeal, Petitioner acknowledged that he failed to register in writing, but argues that written registration is not required and that he "effectively registered in three ways, by telling a Monterey County sheriff's deputy his place of employment in Sand City, by telling an unidentified Sand City police officer that he wanted to register, and by living 'openly and notoriously' in Sand City."  In concluding that there was substantial evidence to support Petitioner's conviction, the state appellate court stated:

We conclude that living "openly and notoriously" is not the legal equivalent of registration. Further, defendant's conviction of a willful failure to register is supported by the following evidence. Defendant lived in Sand City. Sand City had no record of defendant registering until after he was arrested for failing to register. He was told by Officer Graziano that he had to register. He was on notice of this duty from years of registering. He admitted that, after the police circulated fliers identifying him as a sex offender, he did not want the police to know where he lived.

Exh. G at 10.

The state appellate court properly applied the <u>Jackson</u> standard to the instant case and found that there was more than sufficient evidence to convict Petitioner for failing to register as a sex offender.

---

[2]The time for registration changed from 14 days to 5 in 1996. (State. 1996, ch. 909, § 2, No. 11 West's Cal. Legis. Service, pp. 4150-4152.) The information in this case charged Petitioner with failing to register in 1998 within 14 days.

United States District Court

For the Northern District of California

This Court concludes that Petitioner has failed to establish that the appellate court's decision was contrary to, or an unreasonable application of, clearly established federal law, or that it was based upon an unreasonable determination of the facts.

### B. Notice of Duty to Register

Petitioner next contends that his conviction violates his right to due process because he did not have notice of the duty to register. Respondent argues that this claim is meritless as there is sufficient evidence that Petitioner did have notice of the duty to register. In concluding that there was ample evidence that Petitioner had notice of the duty to register, the state appellate court stated the following:

> Defendant also argues that he had no notice of the duty to register. This overlooks Officer Graziano's testimony that he told defendant to register in Sand City. It also overlooks the evidence that every registration form signed by defendant reminded him of his lifetime obligation to remain registered. The evidence does not support defendant's due process argument about lack of actual knowledge.

Exh. G at 9.

This Court agrees with the state appellate court that there was sufficient evidence that Petitioner was on notice of the duty to register.

### C. Cruel and Unusual Punishment

Finally, Petitioner contends that his sentence constituted cruel and unusual punishment under the Eighth Amendment. A criminal sentence that is not proportionate to the crime for which the defendant was convicted violates the Eighth Amendment. See Solem v. Helm, 463 U.S. 277, 290 (1983) (sentence of life imprisonment without possibility of parole for seventh nonviolent felony violated the Eighth Amendment). But "outside the context of capital punishment, successful challenges to the proportionality of particular sentences will be exceedingly rare." Id. at 289-90. The Eighth Amendment forbids only extreme sentences that are grossly disproportionate to the crime.

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.02\Holifield585den
9

United States District Court

For the Northern District of California

1 | See Ewing v. California, 538 U.S. 11, 28-29 (2003); Harmelin v. Michigan, 501 U.S. 957, 1001

2 | (1991); Solem, 463 U.S. 303; Rummel v. Estelle, 445 U.S. 263, 285 (1980).

3 | According to the proportionality principle, in reviewing the appropriateness of a sentence

4 | under a recidivist statute, the Court must consider whether the sentence "is justified by the gravity of

5 | [an individual's] most recent offense and criminal history." Ramirez v. Castro, 365 F.3d 755, 768

6 | (9th Cir. 2004). The "factual specifics" and the nature of the individual's priors, such as whether the

7 | conduct involved violence or was particularly serious, will determine whether it is relevant for

8 | consideration. Reyes v. Brown, 399 F.3d 964, 969 (9th Cir. 2005) (holding that the record before the

9 | district court was not sufficiently detailed to make such a finding and remanding for further

10 | development of the record). The Court also may take into account the government's interest in both

11 | punishing the particular offense and dealing with repeat criminals in a harsher manner. United States

12 | v. Bland, 961 F.2d 123, 129 (9th Cir.), cert. denied, 506 U.S. 858 (1992) (citing Rummel, 445 U.S.

13 | at 276). Only if the Court finds a rare circumstance of an inference of gross disproportionality will

14 | the Court then engage in a comparative analysis comparing Petitioner's sentence with sentences of

15 | other defendants in the same jurisdiction and sentences for the same crime in other jurisdictions.

16 | Solem, 463 U.S. at 290-92; Harmelin, 501 U.S. at 1005 (Kennedy, J., concurring). However, the

17 | threshold for an "inference of gross disproportionality" is quite high. See Harmelin, 501 U.S. at

18 | 1005 (Kennedy, J., concurring).

19 | The Court concludes that this is not one of those "exceedingly rare" cases in which an

20 | inference of gross disproportionality arises. The crimes for which Petitioner was convicted were

21 | violent crimes, including rape and kidnaping. The state appellate court noted:

> Defendant was convicted of three felonies in 1983, two counts of forcible rape and one of kidnaping, and he was convicted of two felonies committed in 1998, the current offense and an attempted kidnaping. One reason for the time between felonies

United States District Court
For the Northern District of California

1       is that defendant was incarcerated for nine years. As the trial court pointed out,
2   defendant also has two recent misdemeanor convictions, including battery on a
    woman. Though the current offense is not serious, defendant's recidivism militates
3   in favor of lengthy incarceration.

4

5   Exh. G at p. 14.

6           Considering the gravity of the offenses for which Petitioner was convicted and the nature of

7   his criminal history, Petitioner's twenty-seven years-to-life sentence does not reflect gross

8   disproportionality.  Petitioner's claim that his sentence violates the Eighth Amendment's prohibition

9   against cruel and unusual punishment is without merit.

10

11   **IV. CONCLUSION**

12           The Court concludes that Petitioner has failed to show any violation of his federal

13   constitutional rights in the underlying state criminal proceedings.  Accordingly, the petition for writ

14   of habeas corpus is denied.  The Clerk shall close the file.

15           IT IS SO ORDERED.

16

17   DATED: _____                    _____

18                                             JEREMY FOGEL
                        United States District Judge

19

20

21

22

23

24

25

26

27

28

1   On _12 -13 -05_, a copy of this order was mailed to the following:

2

3

Charles Allen Holifield
4   P-50571
5   CA State Prison - Los Angeles County
44750 60th Street West
6   Lancaster, CA  93536

7

8   Gregory A. Ott
CA Attorney General 's Office
9   455 Golden Gate Avenue
Suite 11000
10  San Francisco, CA  94102-7004

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.02\Holifield585den                    12